1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

| CHERYL JONES, | ) | Case No. CV 09-2254 JC |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND |
| v. | ) | ORDER OF REMAND |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| Defendant. | ) | |

18
19
20
21
22
23
24
25
26
27
28

**I.    SUMMARY**

        On December 10, 2009,  plaintiff Cheryl Jones ("plaintiff") filed a

Complaint seeking review of the Commissioner of Social Security's denial of

plaintiff's application for benefits.  The parties have consented to proceed before a

United States Magistrate Judge.

        This matter is before the Court on plaintiff's motion for summary judgment

(the "Motion"), filed on March 19, 2010.  Defendant filed an opposition (the

"Opposition") on April 18, 2010.  The Court has taken the Motion under

submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; December

17, 2009 Case Management Order ¶ 5.

1   Based on the record as a whole and the applicable law, the decision of the
2   Commissioner is REVERSED AND REMANDED for further proceedings
3   consistent with this Memorandum and Opinion and Order of Remand because the
4   the Administrative Law Judge ("ALJ") erred in rejecting the opinion of plaintiff's
5   treating physician.

6   **II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE**
7          **DECISION**

8          On or about February 12, 2007, plaintiff filed an application for Disability
9   Insurance Benefits.  (Administrative Record ("AR") 83-85).  Plaintiff asserted that
10  she became disabled on March 31, 2006, due to high blood pressure, arthritis and
11  diabetes.  (AR 83, 97).  The Social Security Administration denied plaintiff's
12  application initially and on reconsideration, finding that plaintiff's limitations
13  would not prevent her from performing her past relevant work as plaintiff
14  described.  (AR 40-52).  Plaintiff requested a hearing before an ALJ which
15  occurred on November 19, 2008.  (AR 17-39, 55).  The ALJ examined the medical
16  record and heard testimony from plaintiff (who was represented by counsel) and
17  plaintiff's daughter.  (AR 17-39).

18         On January 16, 2009, the ALJ determined that plaintiff was not disabled
19  through the date of the decision.  (AR 7-16).  Specifically, the ALJ found:
20  (1) plaintiff suffered from the following severe impairments:  diabetes mellitus,
21  morbid obesity, and osteoarthritis (AR 12); (2) plaintiff's impairments, considered
22  singly or in combination, did not meet or medically equal one of the listed
23  impairments (AR 12); (3) plaintiff retained the residual functional capacity to
24  perform a full range of light work as defined in 20 C.F.R. § 404.1567(b) (AR 12);[1]

25

26  _____

27  [1]The ALJ reportedly adopted nonexamining State agency physician Dr. Vu's Physical
    Residual Functional Capacity Assessment, which found that plaintiff:  (1) could occasionally lift
28  and/or carry 20 pounds, frequently lift and/or carry 10 pounds; (2) could stand and/or walk with
    normal breaks about six hours in an eight-hour workday; (3) could sit with normal breaks for

    (continued...)

1   (4) plaintiff could perform her past relevant work as a logistics clerk (AR 15); and

2   (5) plaintiff's allegations regarding her limitations were not totally credible  (AR

3   15).  The Appeals Council denied plaintiff's application for review.  (AR 1-3).

4   **III.   APPLICABLE LEGAL STANDARDS**

5         **A.     Sequential Evaluation Process**

6         To qualify for disability benefits, a claimant must show that she is unable to

7   engage in any substantial gainful activity by reason of a medically determinable

8   physical or mental impairment which can be expected to result in death or which

9   has lasted or can be expected to last for a continuous period of at least twelve

10   months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.

11   § 423(d)(1)(A)).  The impairment must render the claimant incapable of

12   performing the work she previously performed and incapable of performing any

13   other substantial gainful employment that exists in the national economy.  Tackett

14   v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

15         In assessing whether a claimant is disabled, an ALJ is to follow a five-step

16   sequential evaluation process:

17        (1)   Is the claimant presently engaged in substantial gainful activity?  If

18             so, the claimant is not disabled.  If not, proceed to step two.

19        (2)   Is the claimant's alleged impairment sufficiently severe to limit

20             her ability to work?  If not, the claimant is not disabled.  If so,

21             proceed to step three.

22   ///

23   _____

24        [1](...continued)

25   about six hours in an eight-hour workday; (4) could push and/or pull without limits; (5) could
occasionally climb ramps/stairs, balance, stoop, kneel, and crouch, but could never climb

26   ladders/ropes/scaffolds or crawl; and (6) should avoid concentrated exposure to extreme cold,
wetness, and hazards.  See AR 13 (ALJ adopting Dr. Vu's assessment); AR 133-37 (Dr. Vu's

27   assessment).  Dr. Vu noted that plaintiff "[m]ay use [a] cane for prolonged distances, uneven

28   terrain, ascending or descending walkways or as needed for pain flare ups."  (AR 134).

(3)     Does the claimant's impairment, or combination of
        impairments, meet or equal an impairment listed in 20 C.F.R.
        Part 404, Subpart P, Appendix 1?  If so, the claimant is
        disabled.  If not, proceed to step four.

(4)     Does the claimant possess the residual functional capacity to
        perform her past relevant work?[2]  If so, the claimant is not
        disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when
        considered with the claimant's age, education, and work
        experience, allow her to adjust to other work that exists in
        significant numbers in the national economy?  If so, the
        claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

        The ALJ has an affirmative duty to assist the claimant in developing the
record at every step of the inquiry.  Bustamante v. Massanari, 262 F.3d 949, 954
(9th Cir. 2001); see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005)
(ALJ has special duty to fully and fairly develop record and to assure that
claimant's interests are considered).  The claimant has the burden of proof at steps
one through four, and the Commissioner has the burden of proof at step five.
Bustamante, 262 F.3d at 953-54 (citing Tackett); see also Burch, 400 F.3d at 679
(claimant carries initial burden of proving disability).

        **B.    Standard of Review**

        Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
benefits only if it is not supported by substantial evidence or if it is based on legal

---

[2]Residual functional capacity is "what [one] can still do despite [ones] limitations" and
represents an "assessment based upon all of the relevant evidence."  20 C.F.R. § 404.1545(a).

4

1  error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

2  2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

3  (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable

4  mind might accept as adequate to support a conclusion."  Richardson v. Perales,

5  402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

6  mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing

7  Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

8       To determine whether substantial evidence supports a finding, a court must

9  "'consider the record as a whole, weighing both evidence that supports and

10  evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.

11  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

12  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

13  or reversing the ALJ's conclusion, a court may not substitute its judgment for that

14  of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

15  **IV.   DISCUSSION**

16       Plaintiff contends that the ALJ improperly rejected the opinion of plaintiff's

17  treating physician, Dr. Ford.  (Motion at 7-9).  Plaintiff also contends that

18  substantial evidence does not support the ALJ's residual functional capacity

19  assessment which is based entirely on the opinion of nonexamining State agency

20  physician Dr. Vu.  (Motion at 9-10).  Upon reviewing the record, the Court finds

21  that the ALJ erred in rejecting Dr. Ford's opinion.

22       **A.   Pertinent Law**

23       In Social Security cases, courts employ a hierarchy of deference to medical

24  opinions depending on the nature of the services provided.  Courts distinguish

25  among the opinions of three types of physicians:  those who treat the claimant

26  ("treating physicians") and two categories of "nontreating physicians," namely

27  those who examine but do not treat the claimant ("examining physicians") and

28  those who neither examine nor treat the claimant ("nonexamining physicians").

1   Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (1996) (footnote

2   reference omitted).  A treating physician's opinion is entitled to more weight than

3   an examining physician's opinion, and an examining physician's opinion is

4   entitled to more weight than a nonexamining physician's opinion.  See id.  In

5   general, the opinion of a treating physician is entitled to greater weight than that of

6   a non-treating physician because a treating physician "is employed to cure and has

7   a greater opportunity to know and observe the patient as an individual."  Morgan

8   v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir.

9   1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

10          A treating physician's opinion is not, however, necessarily conclusive as to

11  either a physical condition or the ultimate issue of disability.  Magallanes v.

12  Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d

13  759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not

14  contradicted by another doctor, it may be rejected only for clear and convincing

15  reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal

16  quotations omitted).  An ALJ can reject the opinion of a treating physician in favor

17  of a conflicting opinion of another examining physician if the ALJ makes findings

18  setting forth specific, legitimate reasons for doing so that are based on substantial

19  evidence in the record.  Id. (citation and internal quotations omitted).  "The ALJ

20  must do more than offer his conclusions."  Embrey v. Bowen, 849 F.2d 418,

21  421-22 (9th Cir. 1988).  "He must set forth his own interpretations and explain

22  why they, rather than the [physician's], are correct."  Id.; see Thomas v. Barnhart,

23  278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed

24  and thorough summary of facts and conflicting clinical evidence, stating his

25  interpretation thereof, and making findings) (citations and quotations omitted).

26  "Broad and vague" reasons for rejecting a treating physician's opinion do not

27  suffice.  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir.1989).

28  ///

6

1    When they are properly supported, the opinions of physicians other than

2    treating physicians, such as examining physicians and nonexamining medical

3    experts, may constitute substantial evidence upon which an ALJ may rely.  See,

4    e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative

5    examiner's opinion on its own constituted substantial evidence, because it rested

6    on independent examination of claimant); Morgan, 169 F.3d at 600 (testifying

7    medical expert opinions may serve as substantial evidence when "they are

8    supported by other evidence in the record and are consistent with it").

9    **B.    The ALJ Improperly Rejected Plaintiff's Treating Physician's**

10   **        Opinion Concerning Plaintiff's Limitations**

11   The record shows that Dr. April Ford of the Chaparral Medical Group

12   treated plaintiff monthly for diabetes, hypertension, peripheral neuropathy,

13   obesity, hyperlipidemia, and depression from June 21, 2007 through at least

14   January 2009, when the ALJ rendered the decision.  (AR 207-23).

15   Dr. Ford completed a "Multiple Impairment Questionnaire" dated April 20,

16   2008.  (AR 187-95).  Dr. Ford diagnosed plaintiff with "bilateral knee

17   osteoarthritis, peripheral neuropathy, uncontrolled diabetes,[3] hypertension,

18   hyperlipidemia, and obesity," based on an x-ray report of plaintiff's right knee

19   from April 10, 2007,[4]  plaintiff's weight at over 300 pounds,[5] and a blood panel

20

21

22   [3]Dr. Ford did not explain why plaintiff's diabetes is uncontrolled.  (AR 189).  However,
23   Dr. Ford's  treatment notes from June 2007 and from January, February, April and June 2008,
     indicate that plaintiff's diabetes then appeared uncontrolled.   (AR 209, 214, 216, 218-19, 222).

24
25   [4]The x-ray report, which predates Dr. Ford's treatment of plaintiff by two months, notes
     that plaintiff suffers from degenerative changes to her right knee.  (AR 185).   It is not clear from
26   the record whether Dr. Ford reviewed any of plaintiff's other medical records from prior to the
     time that Dr. Ford began treating plaintiff.

27
28   [5]Dr. Fords treatment notes indicate that plaintiff's weight varied from 348 to 367 pounds
     during treatment.  (AR 208-22).

7

from January 2008.[6]  (AR 187).  Dr. Ford noted that plaintiff's complaints support the diagnosis of peripheral neuropathy.  (AR 187).  Plaintiff presented with difficulty ambulating due to knee and foot pain, and complained of numbness and burning sensation in her feet.[7]  (AR 188-89).  Dr. Ford gave plaintiff a "fair" prognosis, noting "difficult as patient is unable to afford meds and other treatments."[8]  (AR 187, 189).

Dr. Ford opined that plaintiff would be able to sit up to five hours and stand up to two hours in an eight hour day, with the need to move around every two to three hours.[9]  (AR 189-90).  Plaintiff could occasionally lift and carry up to 20 pounds, and frequently lift and carry five pounds.  (AR 190).  Plaintiff would be unable to perform repetitive lifting due to her knee pain and obesity.  (AR 190).  Plaintiff would be limited to no pushing, no pulling, no kneeling, no bending, and no stooping and must avoid temperature extremes.  (AR 194).  Plaintiff also would be limited to a low stress job due to plaintiff's depression and the effects of stress on blood sugars.  (AR 193).  Finally, Dr. Ford opined that plaintiff likely would be

///

---

[6]A laboratory report from January 2008 shows that plaintiff's glucose and lipid profiles were high.  (AR 225-26).  The report includes a notation initialed by Dr. Ford stating that plaintiff's cholesterol and diabetes are "out of control with [reduced/decreased] kidney function," and noting the need to increase certain of plaintiff's medications.  (AR 226).

[7]In a "Disability Report - Field Office" form dated February 12, 2007, the Agency interviewer described plaintiff as a "very obese woman," and observed that plaintiff had "difficulty standing up from sitting position," and "had to set her balance before taking a step." (AR 93-95).

[8]Dr. Ford's treatment notes from October of 2007 appear to note that plaintiff "would benefit from PT [physical therapy] but can't afford to go due to lack of insurance."  (AR 220).  In January of 2009, Dr. Ford noted that plaintiff had run out of her medicine one week prior and reported a blood pressure of 150/89.  Dr. Ford opined that plaintiff's hypertension then was uncontrolled due to "lack of meds."  (AR 208).

[9]Elsewhere Dr. Ford noted that plaintiff would need to take unscheduled breaks four to five times a day for 20 to 30 minutes at a time.  (AR 193).

1  absent from work more than three times a month due to her impairments or
2  treatment.  (AR 194).

3      While the ALJ acknowledged Dr. Ford's assessment of plaintiff's
4  limitations, the ALJ rejected the assessment, noting:

5      The undersigned finds that the "Multiple Impairment Questionnaire"
6      dated April 20, 2008, completed by April Ford, M.D., is an example
7      of an exaggerated, accommodative, indulgent form.  This exhibit is
8      particularly lacking in persuasive value since it is completely
9      unsupported by the records from the source's own medical group.
10     The undersigned finds it to be a coincidence that the residual
11     functional capacity would permit past relevant work, but that Dr. Ford
12     limited the claimant to seven hours a day total activity with no
13     explanation why that particular figure was selected.  The form
14     obviously accepts the claimant's allegations with no assessment of
15     the accuracy of all the claimant's assertions.  The undersigned has
16     considered it but finds it unpersuasive and unsupported by the actual
17     clinical and diagnostic findings.

18 (AR 14).  These are not specific, legitimate reasons for rejecting Dr. Ford's
19 opinion in favor of the nontreating State agency physician's contradictory opinion.

20     First, contrary to the ALJ's assertion (and as summarized above), Dr. Ford's
21 opinion is not "completely unsupported" by her medical records or by the "actual
22 clinical and diagnostic findings."  Dr. Ford based her opinion at least in part on a
23 laboratory report prepared at Dr. Ford's request and the x-ray report that was
24 prepared at the request of plaintiff's other treating physician.  (AR 225-26).  The
25 ALJ's mischaracterization of the record calls into question the validity of both the
26 ALJ's residual functional capacity assessment and the ALJ's decision as a whole.
27 See Regennitter v. Commissioner, 166 F.3d 1294, 1297 (9th Cir. 1999) (materially
28 ///

1 | "inaccurate characterization of the evidence" warrants remand); Lesko v. Shalala,

2 | 1995 WL 263995 *7 (E.D.N.Y. Jan. 5, 1995) (same).

3 |   Second, while the ALJ's rejected Dr. Ford's limitation to seven hours a day

4 | of total activity as not properly explained, to the extent the ALJ felt like further

5 | explanation was necessary the ALJ had a duty to develop the record on this point.

6 | Webb v. Barnhart, 433 F.3d at 687; Bustamante v. Massanari, 262 F.3d at 954; see

7 | also Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (ALJ has an

8 | affirmative duty to assist the claimant in developing the record "when there is

9 | ambiguous evidence or when the record is inadequate to allow for proper

10 | evaluation of the evidence.") (citation omitted).

11 |   Third, while the ALJ asserts it is "obvious" that Dr. Ford accepted

12 | plaintiff's allegations without assessing the accuracy thereof, it appears that the

13 | only diagnosis Dr. Ford based on plaintiff's subjective complaints, alone, is

14 | peripheral neuropathy.  (AR 187).  There is no suggestion that Dr. Ford's opinion

15 | is based entirely on plaintiff's otherwise-unsubstantiated subjective complaints.

16 | To the contrary, Dr. Ford noted that she based her opinion on clinical findings in

17 | addition to plaintiff's subjective complaints.  (AR 187-88).  If the ALJ questioned

18 | the basis for Dr. Ford's opinion, the ALJ should have inquired of Dr. Ford.   Webb

19 | v. Barnhart, 433 F.3d at 687; Bustamante v. Massanari, 262 F.3d at 954; Mayes v.

20 | Massanari, 276 F.3d at 459-60.

**C.**  **The Court Cannot Determine Whether Substantial Evidence in the Record Supports the ALJ's Residual Functional Capacity Determination**

24 |   The ALJ rejected Dr. Ford's assessment in favor of the opinion of Dr. Vu, a

25 | nonexamining State agency physician, finding that plaintiff could do light work.

26 | (AR 13).  Dr. Vu's opinion, as that of a nonexamining State agency physician,

27 | may not serve as substantial evidence to support the ALJ's residual functional

28 | capacity determination unless the opinion is based on independent clinical

1   findings.  See Lester v. Chater, 81 F.3d at 831 ("The opinion of a nonexamining

2   physician cannot *by itself* constitute substantial evidence that justifies the rejection

3   of either an examining physician *or* a treating physician.") (emphasis added); see

4   also Widmark v. Barnhart, 454 F.3d 1063, 1066 n. 2 (9th Cir. 2006) (noting same);

5   compare Orn v. Astrue, 495 F.3d at 632 ("When an examining physician relies on

6   the same clinical findings as a treating physician, but differs only in his or her

7   conclusions, the conclusions of the examining physician are not 'substantial

8   evidence.'"); see also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) (as

9   amended) (discussing same).

10          Dr. Vu's review dated April 17, 2007, which predates Dr. Ford's treatment

11  of plaintiff by three months, was based entirely on the record of plaintiff's

12  treatment by plaintiff's prior treating physician, Dr. Soung.[10]  See AR 139 (Dr.

13  Vu's assessment noting review of the medical record); AR 146-61 (Dr. Soung's

14  treatment notes).  There were no consultative examinations in the record and there

15  was no medical expert testimony for Dr. Vu to review.  Dr. Vu opined  that

16  plaintiff's allegations were "partially credible, and supported" by the medical

17  record, but concluded that "fully disabling severity is not established by the

18  objective findings."[11]  (AR 139).

19  ///

20

21          [10]Dr. Soung's treatment notes consist of "Diabetic Progress Notes" from March 2005

22  through June 2007, noting, *inter alia*, diabetes, morbid obesity, and hypertension.  (AR 145-59).
     Dr. Soung's initial physical examination form lines through "normal" for each physical category

23  of the exam (*e.g.*, skin, head, EENt, Neuro), but has notations for "extreme" obesity, and

24  osteoarthritis in plaintiff's knees and left thumb.  (AR 159).  As the ALJ pointed out, each note
     thereafter lines through "normal" for "neuro" and "low back ROM [range of motion]."  (AR 13-

25  14, referencing AR 146-58).  The record is not clear as to how extensive were Dr. Soung's

26  physical examinations.

27          [11]State agency review physician, Dr. R.A. Bitonte, later affirmed Dr. Vo's residual
     functional capacity assessment after reviewing only the first two months of Dr. Ford's treatment

28  notes.  See AR 162-63 (Dr. Bitonte's August 10, 2007 "Case Analysis").

It is unclear whether Dr. Vu's opinion is supported by other evidence in the record, not reviewed by Dr. Ford as part of Dr. Ford's assessment of plaintiff's limitations.  Without support from independent clinical findings, Dr. Vu's opinion may not be viewed as substantial evidence to support the ALJ's residual functional capacity determination.  See Orn v. Astrue, 495 F.3d at 632.  Given the Court's finding that the ALJ materially erred in rejecting Dr. Ford's opinion, the Court need not decide on the current record whether Dr. Vu's findings constitute substantial evidence to support the ALJ's residual functional capacity determination.  Any ambiguity can be resolved on remand.

## V.   CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[12]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  December 3, 2010

_____
/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[12]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).